UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE ANDREW WARNER,

        **Plaintiff,**                Case No.:    **8:26-cv-01173-WFJ-TGW**

**v.**

**OFFICER HOLLY WOOD, et al.**

        **Defendants.**

_____/

## MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM OF LAW

Defendants, CITY OF TAMPA, HOLLY WOOD ("Wood"), in her individual capacity; and JAIR ROUSE ("Rouse"), in his individual capacity, by and through the undersigned counsel, hereby move this Court for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and, in support thereof, states:

### INTRODUCTION

On **November 4, 2025**, Officer Wood ("Wood") conducted a traffic stop on Blake Warner ("Warner") as he rode a motorbike and the stop resulted in the issuance of a traffic citation related to the visibility of Warner's tag. **April 23, 2026**, Warner filed a civil rights Complaint (**Doc. 1**) that named the City of Tampa, Officer Wood, Officer Rouse ("Rouse"), and Dave Kerner, the Executive Director of the Florida Department of Highway Safety and Motor Vehicles ("FDHSMV") as Defendants. The Complaint contained 13 Counts as follows:

| Count | Claim | Defendant |
|---|---|---|
| I | Fourth Amendment: Unreasonable Seizure (Pretextual stop) | Wood and Rouse |
| II | Fourth Amendment: Unlawful Extension of Stop | Wood and rouse |
| III | Fourth Amendment: Unlawful seizure of second motorcycle | Wood and Rouse |
| IV | First Amendment:  Retaliation | Wood and Rouse |
| V | Fourteenth Amendment: Equal Protection-selective enforcement on the basis of race | Wood and Rouse |
| VI | Full and Equal Benefit of the Laws | Wood and Rouse |
| VII | Municipal Liability | City of Tampa |
| VIII | Municipal Liability: TPD policy of Aggressive enforcement Against Dirt bike riders | City of Tampa |
| IX | Fourteenth Amendment Due Process: Void for Vagueness – fair notice- facial and as applied Challenge to Fla. Stat 316.2085(3) | City of Tampa and FSDHSMV |
| X | Fourteenth Amendment Due Process: Void for Vagueness – standardless enforcement – facial and as applied challenge to Fla. Stat 316.2085(3) | City of Tampa and FSDHSMV |
| XI | Fourteenth Amendment Equal Protection: facial and as applied challenge to Fla Stat 316.2085(3) | City of Tampa and FSDHSMV |
| XII | Fourteenth Amendment Due process – void for vagueness - Ambigous Plate Display Requirement, facial and as applied challenge to Fla. Stat 316.605and 316.2085(3) | City of Tampa and FSDHSMV |
| XIII | Fourteenth Amendment – Void for vagueness, Disparate Treatment of Motorcyclists – facial and as applied challenge to Fla. State 316.605 and 316.2085(3) | City of Tampa and FSDHSMV |

2

## STANDARD OF REVIEW

Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Stryker v. City of Homewood*, 978 F. 3d 769, 773 (11th Cir. 2020). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); Edwards *v. Acadia Realty Trust, Inc.,* 141 F.Supp.2d 1340, 1344-45 (M.D. Fla. 2001). When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Garguilo v. G.M. Sales, Inc.,* 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1997).

Qualified immunity protects officials performing discretionary functions from liability "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Strock v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). If an official's conduct is not unlawful, the doctrine of qualified immunity exempts government officials from damage suits to enable them to perform their responsibilities without threats of liability. *Hutton v. Strickland,* 919 F.2d 1531, 1536 (11th Cir. 1990). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Mccoy v. Webster,* 47 F.3d 404, 407 (11th Cir. 1995), quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

The Supreme Court has set forth a two-part analysis to be applied to a defense of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. However, if a constitutional right would have been violated under the Plaintiff's version of the facts, the next sequential step is to ask whether the right was clearly established. *Id.; Strock*, 354 F.3d at 1314.

In *Saucier*, the Supreme Court stated that the relevant query is whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* In *Hope*, the Supreme Court refined the *Saucier* query, holding that the "…salient question… is whether the state of law gave [the officers] fair warning that their alleged treatment [of the plaintiff] was unconstitutional." The *Hope* Court emphasized that officers sued in a section 1983 action have a "right to fair notice." 536 U.S. at 739.To demonstrate that summary judgment is appropriate on a qualified immunity defense; the defendant must show that he is entitled to judgment as a matter of law, and that there are no genuine issues of material fact pertinent to that law. *Sims v. Metro Dade County,* 972 F.2d 1230, 1233-34 (11th Cir. 1992), citing *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988). The *Saucier* analysis is still an appropriate consideration in qualified immunity cases, but the sequence of analysis should not be

4

regarded as an inflexible requirement in all cases. *Pearson v. Callahan*, 555 U.S. 223 (2009)

## STATEMENT OF UNDISPUTED FACTS

1. On November 4, 2025, at approximately **22:56 hours**, Wood ("Wood") was on duty, in full police uniform and drove a marked patrol SUV.

2. Wood was equipped with a body-worn camera that was activated during the traffic stop and recorded her interaction with Warner.

3. Wood observed two motor bikes travelling on Manhattan Avenue near West Gandy Boulevard.

4. Wood was unable to read the tag on one of the motor bikes and conducted a traffic stop.

5. The traffic stop occurred in a well-lit commercial parking lot, on Manhattan Avenue that included multiple commercial establishments like McDonald's and Publix.



6. At or about **22:57:58**, Officer Garrett ("Garrett") arrived on scene in full police uniform as back up to Wood.

7. Garrett was equipped with a body worn camera that was activated and recorded the interaction with Warner.

8. At or about **22:59:17**, Officer Jair ("Rouse") arrived on scene in full police uniform as back up to Wood.

9. Rouse was equipped with a body worn camera that was activated and recorded the interaction with Warner.

10. Wood exited her vehicle at 22:57 hours and approached the two men on the motorbikes.

11. At **22:57:56**, Wood read the tag (MWFF13) of the second motorbike to the dispatcher as soon as she approached Warner and his friend.

12. At **22:58:04**, Wood immediately provided the reason for the traffic stop and told Warner that Warner's tag was unreadable and the tag on the second bike was expired.

13. Warner volunteered that the second bike belonged to him, seemed confused and asked if the tag on the second bike was expired and Wood advised that the tag expired in 08/24, more than one year before the traffic stop.

14. At 22:58:09, Warner asked Wood if she ran the tag on the second bike and she advised that she had not run the tag of the second bike, because the reason for the stop was Warner's unreadable tag, but since she was there, she provided the information about the expiration.

15. At **22:58:15**, Wood asked Warner for his license, registration and insurance and stated that his tag was "completely unreadable and obstructed".

16. At **22:58:26**, Warner provided his driver's license.

17. At **22:58:45**, Wood walked to Warner's left side and stood to the left side of the bike, within 5 feet and read out the tag number to the dispatcher.

18. The tag on Warner's motorbike was located under the seat on the rear axle of the motorbike.

19. The design of the motorbike's seat sloped upward and had another feature that sloped out and downward.

20. Immediately after reading Warner's tag number, Wood returned to her vehicle with Warner's driver's license.

7

21. At **22:58:58**, Wood entered her vehicle.

22. While Wood was in her vehicle, Rouse and Garrett stood by with Warner and his friend (second bike rider).

23. As soon as Wood entered her vehicle, she turned her computer toward the driver's seat and the mouse on the screen began to move.

24. At or about **22:59:30**, Wood began entering information into her computer to issue a citation.

25. At **23:01:06**, Wood yelled out to ask if Warner had a motorcycle endorsement.

26. At 23:01:12, Warner responded that Wood had his license, and Rouse repeated the response to Wood.  [Rouse video]

27. At **23:04:51**, citation number ALQU39E, for a violation of violation of Florida Statute § 316.2085(3), was printed in Wood's car.

28. Florida Statute § 316.2085(3) mandates that the license tag of a motorcycle or moped must be permanently affixed to the vehicle and remain clearly visible from the rear at all times.

29. At **23:05:01**, Wood compared the citation to the information on Warner's driver's license.

30. At **23:05:32**, Wood returned to Warner, handed Warner his license, handed Warner the ticket and advised him to take care of it and said as she pointed to the tag said "that needs to be fixed" or he would keep getting pulled over and

issued tickets for it. Wood advised that the fine was $1,000 and began to walk away from Warner.

31. At **23:05:50**, Wood returned to her vehicle and the interaction ended.

32. Wood spent most of the time during the traffic stop in her car entering information to produce the ticket.

33. Wood had limited contact with Warner and his friend during the traffic stop but was always professional while interacting with Warner.

34. The body worn camera worn by Wood shows that the traffic stop was approximately nine (9) minutes. **Exhibit A**—Wood Body Worn Camera, AXON Body 4 D01AE0318, length 09:12.

35. The body worn camera worn by Garrett shows he was present at the traffic stop for approximately 8 ½ minutes.  **Exhibit B** -Garrett Body Worn Camera, Axon Body 4, D01AE363K, duration 8:28.

36. The body worn camera worn by Rouse shows he was present at the traffic stop for approximately six (6) minutes. **Exhibit C** – Rouse Body Worn Camera, Axon Body 4, D01AE911Q, 06:41 length.

37. The citation was prosecuted in traffic court under Thirteenth Judicial Circuit case number 2025-TR-111625.

## MEMORANDUM OF LAW

### I.   The undisputed facts do not demonstrate that a Fourth Amendment violation occurred during the subject traffic stop.

Warner contends that Wood used his tag as a pretext to conduct a traffic stop. The Constitution requires an officer to have reasonable suspicion before conducting an investigatory stop.  To determine whether a seizure was reasonable, the Court should consider the test set forth in *Terry v. Ohio*, 392 U.S. 1, 16 (1968). In *Terry*, the Supreme Court indicated that the reasonableness of an investigative stop turns on whether the officers had a reasonable suspicion that the defendant had engaged in, or was about to engage in a crime. As set forth in the facts above, Florida law mandates that license plates on motorcycles be visible and readable. Defendants move for summary judgment as a matter of law because the allegations in the Complaint are contradicted by the video evidence. The Court should accept the video depiction of what occurred and view the facts in the light depicted by the video.  *Baker v. City of Madison*, 67 F. 4th 1268, 1277-78 (11th Cir. 2023).

Further, because Warner sued Wood individually, the existence of arguable reasonable suspicion precludes Warner's claim. *Williamson v. Mills*, 65 F.3d 155, 157 (11th Cir. 1995)(holding that the question is not whether reasonable suspicion existed but rather whether arguable reasonable suspicion existed for the stop.); *Swint v. the City of Wadley, Alabama*, 51 F.3d 988, 996 (11th Cir.1995).  To show that an officer had arguable reasonable suspicion, the officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity. *United States v.*

10

*Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021). The court should look to the totality of the circumstances to determine the existence of reasonable suspicion. *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011).

Wood's video, at 22:58:41 shows the tag was not affixed to the rear fender of the motorcycle. The video shows the tag was not affixed immediately beneath the seat extension.



The video shows the tag was affixed closer to the rear axle and front portion of the rear tire of the motorbike. See Wood video at 22:58:46. The video also clearly demonstrates that the tag as Wood stood directly behind the motorbike. The tag was not visible until Wood moved to the left of the bike, within five feet and read the tag to the dispatcher.



The video further demonstrates that the tag on Warner's bike was not affixed in the same manner as tag on the second motorbike. See Wood video at 22:57:57



12

The video demonstrates that the tag would have been difficult to see or read at night, from 50 feet away, while seated in a police car. Therefore, it is arguable that Wood was unable to see or read the tag from her location. See *Johnson v. Nocco*, 91 F.4th 1114 (11th Cir. 2024)(finding it lawful for deputy to stop a vehicle towing a motorcycle when the trailer's license tag was obscured); *State v English*, 148 So.3d 529 (Fla. 5th DCA 2014)(finding officers had authority to make a traffic stop because at least one letter on license plate was unreadable); *Baker v State*, 164 So.3d 151 (Fla. 1st DCA 2015)(officer had authority to make a traffic stop because license plate was obstructed by trailer hitch); *State v. Parrish*, 731 So.2d 101 (Fla. 2d DCA 1999)(officer could make traffic stop based on placement of temporary license tag on rear window instead of bumper because tag was not visible). Even if Wood was mistaken regarding the visibility of the tag, Wood would still be entitled to qualified immunity.  Warner alleged that he should have been cited under F.S. § 316.605[1] — Licensing of vehicles, rather than section

---

[1] (1)   Every vehicle, at all times while driven, stopped, or parked upon any highways, roads, or streets of this state, shall be licensed in the name of the owner thereof in accordance with the laws of this state unless such vehicle is not required by the laws of this state to be licensed in this state and shall, except as otherwise provided in s. 320.0706 for front-end registration license plates on truck tractors and s. 320.086(5) which exempts display of license plates on described former military vehicles, display the license plate or both of the license plates assigned to it by the state, one on the rear and, if two, the other on the front of the vehicle, each to be securely fastened to the vehicle outside the main body of the vehicle not higher than 60 inches and not lower than 12 inches from the ground and no more than 24 inches to the left or right of the centerline of the vehicle, and in such manner as to prevent the plates from swinging, and all letters, numerals, printing, writing, the registration decal, and the alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front. Except as provided in s. 316.2085(3), vehicle license plates shall be affixed and displayed in such a manner that the letters and numerals shall be read from left to right parallel to the ground. No vehicle license plate may be displayed in an inverted or reversed position or in such a manner that the letters and numbers and their proper sequence are not readily identifiable. Nothing shall be placed upon the face of a Florida plate except as permitted by law or by rule or regulation of a governmental agency. No license plates other than those furnished by the state shall be used. However, if the vehicle is not required to be licensed in this state, the license plates on such vehicle issued by another state, by

316.2085(3) — Riding on motorcycle or moped, but for purposes of the subject traffic stop, it does not matter that the citation was issued pursuant to section 316.2085(3) when the critical question was whether arguable reasonable suspicion existed for *any* offense.

Next the Court must determine whether the stop went too far and matured into an arrest by considering whether the stop was reasonably related in scope to the circumstances which justified the stop in the first place. *United States v. Acosta*, 363 F.3d 1141, 1144 (11th Cir. 2004). Here, the video shows Wood took less than one minute to obtain Warner's license. Wood then called out Warner's tag number on her radio and immediately returned to her vehicle. The video shows Wood entering information into her computer and printing a citation. Wood checked the citation to make sure it was correct and then returned to Warner to return his license and provide the citation. Wood then immediately returned to her vehicle. Wood did not search Warner or his friend. Wood never asked to search Warner or his friend. Wood did not touch Warner or his friend. Wood did not engage in any conversation with Warner or his friend that

---

a territory, possession, or district of the United States, or by a foreign country, substantially complying with the provisions hereof, shall be considered as complying with this chapter. A violation of this subsection is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

(2) Any commercial motor vehicle operating over the highways of this state with an expired registration, with no registration from this or any other jurisdiction, or with no registration under the applicable provisions of chapter 320 shall be in violation of s. 320.07(3) and shall subject the owner or operator of such vehicle to the penalty provided. In addition, a commercial motor vehicle found in violation of this section may be detained by any law enforcement officer until the owner or operator produces evidence that the vehicle has been properly registered and that any applicable delinquent penalties have been paid.

was unrelated to the motorbike. It is undeniable that Wood's conduct during the stop was directly related to the unreadable tag.

In paragraph 18, Warner alleged that he was detained for "more than thirty minutes" during the traffic stop and the duration was unreasonable because it lasted longer than necessary to issue a traffic citation. The allegations in the Complaint cannot be viewed in the light most favorable to Warner when the video blatantly contradicts his characterization of what occurred. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)(holding that a court should not adopt that version of the facts, when ruling on a summary judgment motion, when that version is blatantly contradicted by the record such that no reasonable jury could believe it).  The video shows the traffic stop's duration was a little over nine minutes and the bulk of that time Wood was inside her patrol car entering information to issue a citation. Based on the video, Wood conducted a traffic stop or investigatory detention of Warner because his tag was blocked and thereafter, she issued him a citation. The detention lasted long enough to accomplish its purpose, and Warner was not unreasonably seized or detained. The video demonstrates that Wood spent approximately one minute explaining to Warner why she stopped him and obtained his driver's license. Wood spent the rest of the time in her car entering information and preparing the citation.  Once the citation was ready, Officer Wood spent less than one minute with Warner to provide him with the ticket and return his driver's license.

Nine minutes is significantly shorter than other time frames that have been deemed reasonable. See *United States v. Willis*, 759 F.2d 1486, 1497 (11th Cir. 1985)

15

(finding a twenty-five minute investigatory detention to be reasonable under the circumstances and not an arrest); *U.S. v Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004) ("Thirty minutes duration is not beyond the pale of reasonableness for Terry stops, as our prior decisions make clear."); *Courson v. McMillan*, 939 F.2d 1479, 1491(11th Cir. 1991)(finding "approximately thirty minutes, the majority of the time having been spent awaiting assistance, was not unreasonable for an investigatory stop"); *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988) (permitting fifty minute detention); *U.S. v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988) (approving traffic stop of fifty minutes duration); *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (finding a detention for approximately seventy-five minutes in handcuffs in the back of a patrol car did not exceed the duration allowable under *Terry*) In contrast, nine minutes is de minimis when compared to cases where the duration of the stop was determined to be unreasonable. See *United States v. Place*, 462 U.S. 696, 700 (1983) (finding ninety minutes too long); *United States v. Puglisi*, 723 F.2d 779, 783 (11th Cir. 1984) (finding 140 minutes too long).  In sum, Warner has not demonstrated that the duration of the traffic stop was unreasonable.

Warner contends that the police seized his second motorbike during the subject incident. The undisputed facts show that that the second rider was in possession of Warner's property and they pulled over together. Wood made it clear that the tag on Warner's bike was the reason for the stop, and the second rider never asked Wood if he could leave the stop. No officer ever told the second rider that he could not leave the stop. Moreover, Wood never asked the second rider to even identify himself by

16

giving his name or his identification. Other than addressing the fact that the second motorbike had an expired tag, Wood had very little interaction with the second rider. Later, while Wood was in her car, the rider of the second motorbike asked Rouse if he could get off the motorbike because he wanted to look at Warner's tag, and Rouse asked that he remain on his bike. First, Warner does not have standing to make an argument that the second rider was seized. Ultimately, as argued herein, to the extent that Warner and his two bikes were seized during the traffic stop, the 9-minute duration of the traffic stop was reasonable.

Finally, the undisputed facts show that Rouse's only involvement in the traffic stop was responding as back up to Wood. Rouse did not make the traffic stop. Rouse did not take Warner's license.  Rouse did not enter any information into a computer. Rouse did not converse with Wood about the reason for the traffic stop. Rouse did not assist Wood with her decision to issue the traffic citation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)(holding that a Plaintiff must demonstrate "proof of an affirmative causal connection" between the officials act or omissions and the allegedly unconstitutional conduct.) The facts do not show any link between Rouse's conduct; initiation of the traffic stop or issuance of the citation. Rouse's mere presence at the scene of the traffic stop is not sufficient to demonstrate that Rouse violated Warner's rights. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010).

### III. The undisputed facts do not demonstrate a First Amendment violation.

In Count IV, Warner alleged that Wood issued him a citation in retaliation of his exercise of his right to protected speech. To prove First Amendment retaliation Warmer must demonstrate (1) activity or speech protected by the First Amendment; (2) an adverse action; and (3) a causal connection between the protected speech or activity and the adverse action. *Bennett v. Hendrix*, 423 F.3d1247, 1250 (11th Cir. 2005). Based on the video evidence, no protected speech occurred in this case. The limited conversation between Wood and Warner was strictly related to the tag on his bike. Warner never suggested to Wood that she initiated the traffic stop because he was black. There is no indication from Wood's tone or demeanor that she issued the ticket for any other reason than the visibility of the tag.

At 23:00, as Rouse stood near Warner and his friend, Warner commented to his friend that he was frequently pulled over while riding a dirt bike and said the police profiled him when he rode the dirt bike. Warner then began to directly address his belief that he was profiled to Garrett. A review of Wood's video shows that she always intended to issue a citation to Warner for the unreadable tag, and she was working on issuing the citation around the time that Warner complained about racial profiling. The video clearly demonstrates that Wood's decision was not based on Warner's race or his belief that he was profiled. Further, as argued above, Wood had arguable reasonable suspicion to stop Warner due to the location of his tag and had arguable and actual probable cause to issue the citation. Even if there was some evidence that

18

Wood was motivated by race, her subjective intent would be irrelevant in this case where the objective evidence demonstrates probable existed to issue Warner the citation. See *Prospero v. Sullivan*, 153 F.4th 1171, 1188-89 (11th Cir. 2025)(finding that the existence of arguable probable cause also defeats a First Amendment retaliation claim.)  In sum, Warner has not demonstrated a First Amendment violation.

### III.    The Complaint does not demonstrate a Monell claim.

In Count VII and VIII, Warner alleged the City of Tampa is liable because it has a custom and practice of race-based enforcement of traffic laws against dirt-bike riders. *Complaint* ¶ 77, 83. To prove a *Monell* claim Warner must first demonstrate that a constitutional violation occurred. Next, Warner must prove the municipality maintained a policy or custom that constituted deliberate indifference to her constitutional right; and that the violation was caused by the policy or custom.  *City of Canton v Harris*, 489 US 378, 388 (1989) The City is not vicariously liable for constitutional violations. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Warner must show that the City policy was the moving force behind the constitutional violation. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819-820 (1985). Municipal lability under § 1983 is not implicated unless a constitutional violation occurred.  *McDowell v Brown*, 392 F. 3d 1283, 1290 (11th Cir. 2004).  As argued above, the undisputed facts do not establish that a Fourth Amendment violation occurred, therefore a related *Monell* claim similarly fails. Ultimately, the undisputed facts indicate that Florida law mandates vehicle tags to be visible and the stop occurred

19

because the tag was in a place that made it unreadable. The City of Tampa is entitled to judgment as a matter of law.

### IV.   The City of Tampa did not promulgate Florida Statute § 316.605 or §316.2085.

In Counts IX through XIII, Warner sued the City of Tampa and alleged that it is liable for a Fourteenth Amendment violation stemming from laws that were exclusively promulgated by the State of Florida. Wood, as a certified law enforcement officer in the State of Florida, is charged with the enforcement of Florida laws, however Warner cannot mount a challenge against the City of Tampa, regarding a law created by the Florida legislature. Notably, section 316.002[2] provides express preemption for Chapter 316.  On April 19, 2026, prior to filing the instant lawsuit, Warner filed Motion to Dismiss in his traffic case challenging the constitutionality of section 316.2085(3). The traffic court was the appropriate forum to challenge the law, and Warner received a hearing on April 20, 2026. The motion and hearing demonstrate that Warner received due process. Even if Warner could sue the City of Tampa regarding the constitutionality of the cited state statutes, Federal and Florida law require a court to refrain from reaching constitutional questions where the case

---

[2] **316.002   Purpose.**—It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities. The Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. **It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter**.

can be resolved on other grounds. *In re America-CV Station Group, Inc.*, 56 F.4th 1302 (11th Cir. 2023); *Otto v. City of Boca Raton, Florida*, 981 F.3d 854 (11th Cir. 2020); *In re Holder*, 945 So.2d 1130, 1133 (Fla. 2006). Since there are other grounds to resolve the lawsuit, it is unnecessary for this Court to resolve the claims challenging the statute.

For the foregoing reasons, Defendants, CITY OF TAMPA, HOLLY WOOD, in her individual capacity, and JAIR ROUSE, in his individual capacity, respectfully ask that the Court grant this motion; enter judgment in Defendants' favor; and order such other relief as the Court finds just and appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed on **May 20, 2026**, with the Clerk of Court using CM/ECF and has been served on Blake Warner via email:

**Blake Warner**
**2211 S. Village Avenue**
**Tampa, FL 33612**
**blake@null3d.com**

**SCOTT STEADY, CITY ATTORNEY**
**CITY OF TAMPA**

By:  /s/ Ursula D. Richardson
     Ursula D. Richardson
     Chief Assistant City Attorney
     FBN: 0064467
     315 E. Kennedy Boulevard, 5th Floor
     Tampa, FL 33602
     (813) 274-7205 Telephone
     (813) 274-8894 Facsimile
    Counsel for Defendants, City, Wood and Rouse
     Email: Ursula.Richardson@tampagov.net
     Laytecia.McKinney@tampagov.net

21