# 𝕌nited 𝕊tates 𝔻istrict ℭourt
## For The Middle District of Florida
### Tampa Division

BLAKE WARNER

v.

WOOD, ET AL.

Case Number 8:26-cv-01173-WFJ-TGW

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT DAVE KERNER'S MOTION TO DISMISS

## INTRODUCTION

For every motorist in Florida but one, a license plate an officer finds less than "clearly visible" is a nominal, nonmoving civil infraction. For a motorcyclist, the same condition is a moving violation that escalates — by statute — from a $1,000 fine to a one-year license revocation to a third-degree felony, enforced under visibility terms the Florida Supreme Court has said leave police "unfettered discretion ... limited only by the imagination." Director Kerner's motion reaches only Counts IX through XIII, Plaintiff's constitutional challenges to Fla. Stat. § 316.605 and § 316.2085(3). Plaintiff agrees with the motion's reading of § 316.2085(3) for Counts IX, X, and XI: if the prohibition on "any deliberate act to conceal or obscure" a tag requires intent

1

to conceal, the premise of those counts — a standardless choice between two parallel statutes — dissolves, and Plaintiff does not oppose their dismissal.[1] That concession is conditional and no broader; it does not touch the separate command that a tag "remain clearly visible from the rear at all times," which carries no intent element at all.

The motion otherwise fails. Plaintiff has standing to seek prospective relief: the Florida Highway Patrol that Director Kerner directs enforces these statutes on the roads Plaintiff rides, and a credible threat of future enforcement is all Article III requires. The Complaint is not a shotgun pleading; the motion's own count-by-count argument proves it. Section 316.2085(3) is quasi-criminal — subsequent convictions escalate to a felony — which sets the lens for the remaining two counts. Count XII is void for vagueness: the statutes condition liability on undefined visibility terms, supply no standard to cabin enforcement, and embed a rear-visibility command they contradict by authorizing a perpendicular, tire-obstructed mount. And Count XIII denies equal protection even under rational-basis review: the scheme punishes motorcyclists far more harshly than other motorists for the same plate-display conduct, yet every interest that disparity could serve — toll enforcement, identification, or deterring evasion — is common to all motorists, so none can rationally justify singling out motorcyclists. The Court should deny the motion as to standing, Count XII, and Count XIII; in the alternative, grant leave to amend.

## BACKGROUND

On November 4, 2025, Officer Wood cited Mr. Warner under § 316.2085(3) — the harsher of two parallel plate-display statutes. Compl. ¶¶ 9, 12, 24, 26. Section

---

[1] Plaintiff does not withdraw these counts; he asks the Court to adopt the intent construction the motion advances, a ruling that will govern as the law of the case. The distinction matters because the City Defendants' pending motion for summary judgment rests on a premise that cannot be reconciled with that construction: it asserts that Officer Wood "had arguable and actual probable cause to issue the citation" under § 316.2085(3), Doc. 11 at 18, even though Mr. Warner's plate was visible and no deliberate act obscured it. If § 316.2085(3) requires probable cause of a deliberate act to conceal or obscure — as Director Kerner reads it — that premise fails, giving the City Defendants an incentive to argue that intent is not required. By letter dated June 2, 2026, Plaintiff put the City Defendants on notice that, to preserve any contrary position, they must contest the construction now by responding to Director Kerner's motion; Plaintiff will treat the intent construction as binding and oppose any later no-intent argument as foreclosed. A ruling adopting the construction — not a bare dismissal — is therefore what these counts require.

2

316.605 governs the license tag of every motor vehicle and is a noncriminal, nonmoving infraction that carries no driver's-license points. Fla. Stat. § 316.605(1). Section 316.2085(3) adds motorcycle-specific requirements, and a violation is charged as a moving violation that escalates by statute to a $1,000 fine and, on repetition, a third-degree felony — roughly forty times the exposure of § 316.605, and a criminal exposure that statute never carries. Fla. Stat. § 316.1926(1); § 318.14(13) (set out below). Compl. ¶¶ 24, 26, 27. No statute, regulation, or policy governs which of the two an officer applies. Compl. ¶ 25. The Hillsborough County Court dismissed the citation on April 20, 2026. Compl. ¶ 30.

Mr. Warner owns five registered, street-legal motorcycles, displays plates in a variety of standard and non-standard locations, and routinely rides Florida's public roadways. Compl. ¶ 31. Director Kerner, as Executive Director of the FDHSMV, oversees the Florida Highway Patrol, which enforces Chapter 316 — including §§ 316.605 and 316.2085(3) — on those roadways. Compl. ¶ 8; accord Doc. 22 at 1–2 (Patrol officers enforce "all laws … regulating and governing traffic," citing § 321.05(1)). The Patrol enforces both statutes on the State's highways, roads, and unincorporated areas, Compl. ¶ 49; routinely patrols West Gandy Boulevard — where Mr. Warner was stopped — for license-plate and motorcycle enforcement under both, Compl. ¶ 50; and patrols the unincorporated Hillsborough County area where Mr. Warner resides, so that each ride subjects him to stop and citation by the Patrol, Compl. ¶ 51.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts the Complaint's well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). A standing challenge is jurisdictional; on a facial attack the Court takes the Complaint's allegations as true and asks only whether they suffice. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008).

# I.   PLAINTIFF HAS STANDING TO SEEK PROSPECTIVE RELIEF AGAINST DIRECTOR KERNER.

## A.   TAKEN AS TRUE, THE COMPLAINT'S ENFORCEMENT ALLEGATIONS PLEAD A CREDIBLE THREAT.

Director Kerner mounts a facial attack on standing, so the Court accepts the Complaint's allegations as true and asks only whether they suffice. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008). The Complaint alleges that the Florida Highway Patrol — which Director Kerner leads — enforces §§ 316.605 and 316.2085(3) on the State's highways, roads, and unincorporated areas, Compl. ¶ 49; that West Gandy Boulevard is "a regular situs of FHP traffic-enforcement activity," where troopers "routinely patrol … including license-plate and motorcycle enforcement under" both statutes, Compl. ¶ 50; and that Mr. Warner resides "within FHP's regular traffic-enforcement jurisdiction," so that each time he rides he "is subject to stop and citation by FHP troopers," Compl. ¶ 51. Those are present, situs-specific allegations — not the "may enforce … in the future" speculation the motion attributes to them. Doc. 22 at 9. That the County Court dismissed Mr. Warner's one citation, Compl. ¶ 30, does not end the threat; it confirms the statutes are actively enforced against motorcyclists on the roads he rides. Taken as true, the allegations plead a credible threat of enforcement.

## B.   PROSPECTIVE RELIEF REQUIRES A CREDIBLE THREAT, NOT PAST ENFORCEMENT BY THE NAMED DEFENDANT.

Director Kerner invokes the three-element framework of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and faults the Complaint for alleging that the Patrol "may enforce" these statutes "in the future." Doc. 22 at 9. But standing for prospective relief turns on a credible threat that the law will be enforced against the plaintiff, not on a past enforcement action by the named defendant. *Susan B. Anthony*

4

*List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (an intention to engage in arguably proscribed conduct plus a credible threat of enforcement confers standing). Mr. Warner alleges both. As to the first — an intention to engage in arguably proscribed conduct — he owns five registered motorcycles whose plates are mounted in standard and non-standard locations dictated by custom fender and frame configurations, including a chopped-fender Harley-Davidson whose plate is "conspicuously less visible" than a standard rear mount, and he routinely rides them on the very roads the Patrol patrols. Compl. ¶¶ 31–32, 49–51. Those are placements the statutes' undefined visibility terms arguably reach, so his ordinary, intended conduct exposes him to enforcement — not some hypothetical future event. That he was cited once under § 316.2085(3) — by City officers, Compl. ¶ 26 — is good evidence that the statute is live and actively enforced against motorcyclists, bearing on whether the threat is "chimerical." *Id.* at 164. The threat is not even contested in the record: the City Defendants' own summary-judgment motion recounts that, as Officer Wood handed Mr. Warner the citation, she pointed to the tag and told him it "needs to be fixed" or he "would keep getting pulled over and issued tickets for it." Doc. 11 at 8–9. Plaintiff does not offer that filing as extrinsic evidence on this facial attack — the Complaint's allegations control and suffice — but Director Kerner's premise that future enforcement is conjectural is refuted by his own co-defendants' record, in the words of the officer who cited Mr. Warner.

The motion's own authorities require no more. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), denied standing because the plaintiff could not show he would again be choked; Mr. Warner, by contrast, pleads continuing, particularized exposure — five motorcycles ridden routinely in the Patrol's regular enforcement area for the very conduct these statutes reach. And the threat is not the attenuated "chain of possibilities" rejected in *Clapper v. Amnesty International USA*, 568 U.S. 398, 409–10 (2013), which turned on independent decisions by third parties and a foreign government; here it lies within the Patrol's ordinary, pleaded course of conduct on the

5

roads Mr. Warner rides.

.

## C.  THE INJURY IS TRACEABLE AND REDRESSABLE BECAUSE DIRECTOR KERNER DIRECTS THE ENFORCING AGENCY.

Director Kerner's traceability and redressability argument fails on its own authority. In *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (the plaintiffs should have sued the officials who actually enforce the challenged law), standing failed because the Secretary "does not enforce the challenged law" — independent county supervisors did — and the plaintiffs "should have sued" the officials who do. Mr. Warner did precisely that. As Executive Director of the FDHSMV, Director Kerner directs the Florida Highway Patrol, which enforces §§ 316.605 and 316.2085(3) on Florida's roadways. Compl. ¶¶ 8, 49–51; see Doc. 22 at 1–2 (the motion's own recital that Patrol officers are "tasked with the enforcement of" the traffic laws under § 321.05(1)). His enforcement of the statutes makes Mr. Warner's threatened injury traceable to him and redressable by an injunction against him — and makes him a proper defendant for prospective relief. *Ex parte Young*, 209 U.S. 123, 155–57 (1908) (a state officer charged with enforcing a challenged law is a proper defendant for prospective relief). That distinguishes *Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198, 1206–07 (11th Cir. 2021), where the plaintiffs could not show the Attorney General had any authority to enforce the challenged law.

Because the standing challenge is jurisdictional, it cannot in any event yield the dismissal "with prejudice" Director Kerner requests. A dismissal for lack of standing "is not a judgment on the merits and is entered without prejudice." *Stalley*, 524 F.3d at 1232.

6

## II.   THE COMPLAINT IS NOT A SHOTGUN PLEADING.

A shotgun pleading is one that makes it impossible for a defendant to discern the claims against him or to frame a response. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (cataloguing the four types of shotgun pleadings). Director Kerner invokes the category of a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Doc. 22 at 7 (quoting *Weiland*). The Complaint is the opposite. It pleads thirteen separately numbered counts, each incorporating a defined, limited range of factual paragraphs and identifying a distinct statute, theory, and set of defendants. The motion lists paragraph numbers — Doc. 22 at 8 (citing ¶¶ 4, 6, 12, 21–25) — but never explains why any is immaterial or disconnected from the count it supports, and a bare assertion of immateriality cannot support a Rule 8 dismissal. The dispositive point answers itself: Director Kerner identified the counts against him (IX through XIII) and argued each on the merits. A defendant who can do that has the fair notice Rule 8 requires — the reason *Weiland* reversed the dismissal before it. *Id.* at 1323.

## III.   PLAINTIFF CONDITIONALLY CONCEDES COUNTS IX–XI; OTHERWISE THEY SURVIVE, AND BATCHELDER DOES NOT BAR THEM.

Counts IX, X, and XI rest on the premise that an officer chooses between two interchangeable statutes for the same conduct with no governing standard. Compl. ¶¶ 24–25. Director Kerner answers that § 316.2085(3) prohibits only "any deliberate act to conceal or obscure" a tag, and that an officer must prove the obscuring "was a result of a deliberate act," "committed with deliberate intent." Doc. 22 at 5. If that is the statute's meaning — a deliberate act undertaken with the intent to conceal or obscure — then the choice between the statutes turns on provable intent rather than unguided discretion, and Plaintiff does not oppose dismissal of Counts IX, X,

7

and XI. Overlapping statutes carrying different penalties are not, without more, unconstitutional. *United States v. Batchelder*, 442 U.S. 114, 123–25 (1979) (overlapping provisions that clearly define the conduct prohibited do not offend due process or equal protection).

The concession depends on that construction and goes no further. If § 316.2085(3) instead requires only a deliberate — that is, volitional — act that happens to obscure a tag, without any intent to conceal, then the "intent" element does no work: virtually every plate placement is a deliberate act, and the standardless choice between the two parallel statutes remains. On that reading Plaintiff does not concede Counts IX through XI, and *Batchelder* does not bar them. *Batchelder*'s holding is conditioned on overlapping provisions that "clearly define the conduct prohibited"; where, as the vagueness counts allege, the visibility terms do not, that premise fails. *Batchelder*, 442 U.S. at 123. And *Batchelder* concerned a prosecutor's choice among charges — executive discretion subject to the ordinary checks of the criminal process — not the unguided, on-the-spot choice of a field officer deciding at the roadside which of two strict-liability statutes to invoke. That street-level standardlessness is the vice *Kolender* and *Morales* address, and *Batchelder* did not displace it: the Court there stressed that the discretion it approved was "not 'unfettered'" and that "[s]electivity in the enforcement of criminal laws is, of course, subject to constitutional constraints." *Batchelder*, 442 U.S. at 125. The defect in Counts IX through XI is the absence of that constraint, not the bare existence of two overlapping statutes.

Either way, the substance of Plaintiff's challenge to his own citation — that no probable cause supported a § 316.2085(3) charge, because his plate was visible and there was no deliberate act to conceal or obscure it — is preserved in his Fourth Amendment claims, Counts I through IV, which are not before the Court on this motion.

8

## IV.   SECTION 316.2085(3) IS QUASI-CRIMINAL: A VIOLATION IS A PREDICATE TO A THIRD-DEGREE FELONY.

A violation of § 316.2085(3) is, on its face, a noncriminal traffic infraction. Fla. Stat. § 316.2085. But the scheme does not stop there. Section 316.1926(1) directs that "[a] person who violates the provisions of s. 316.2085(2) or (3) shall be cited for a moving violation," Fla. Stat. § 316.1926(1), and § 318.14(13) then escalates the penalty for each successive § 316.1926 violation: a $1,000 fine for the first, § 318.14(13)(a); a $2,500 fine and a one-year license revocation for the second, § 318.14(13)(b); and, for the third, "a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084," with a $5,000 fine and a ten-year revocation, § 318.14(13)(c). The statute fixes no lookback period; the felony attaches on the third citation whenever it occurs. Section 316.2085(3) is therefore quasi-criminal in the most concrete sense: a conviction is a statutory predicate to an actual felony.[2]

That character matters twice over. Because the prohibition is quasi-criminal — indeed a predicate to a felony — and conditions liability on visibility terms that carry no scienter, those terms must withstand the most exacting vagueness review. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) (a quasi-criminal law's prohibitory and stigmatizing effect may warrant a relatively strict vagueness test); see Count XII. And because every other motorist who commits the identical violation answers only under the noncriminal, nonmoving § 316.605 — no moving violation, no points, no felony — the scheme reserves criminal exposure for motorcyclists alone, which frames the equal-protection claim. See Count XIII.

---

[2] Repeated plate-display convictions independently expose a motorcyclist to felony prosecution as a habitual traffic offender. Fla. Stat. § 322.264(2); § 322.27(5); § 322.34(5).

## V.   COUNT XII STATES A VOID-FOR-VAGUENESS CLAIM ON THREE INDEPENDENT GROUNDS.

### A.   THE UNDEFINED VISIBILITY TERMS GIVE MOTORCYCLISTS NO FAIR NOTICE.

Due process requires that a law give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes," and a statute whose terms are so vague "that men of common intelligence must necessarily guess at its meaning and differ as to its application" offends due process. *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)); accord *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). How much clarity the Constitution demands "depends in part on the nature of the enactment": civil, economic regulation with a scienter requirement is judged leniently, while a law that is criminal or quasi-criminal and carries no scienter is held to the most exacting standard. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982). Section 316.2085(3)'s visibility command carries no scienter, and a first violation alone imposes a $1,000 fine, driver's-license points, and a moving-violation classification, escalating on repetition into a predicate to a third-degree felony. A scienter-free prohibition of that severity is owed fair notice at its most exacting, and the statutes do not provide it.

Sections 316.605 and 316.2085(3) condition liability on visibility terms the statutes never define:

> ... all letters, numerals, printing, writing, the registration decal, and the alphanumeric designation shall be CLEAR AND DISTINCT and free from defacement, mutilation, grease, and OTHER OBSCURING MATTER, so that they will be PLAINLY VISIBLE AND LEGIBLE at all times 100 feet

from the rear or front.

The license tag of a motorcycle or moped must be permanently affixed to the vehicle and **REMAIN CLEARLY VISIBLE FROM THE REAR AT ALL TIMES. ANY DELIBERATE ACT TO CONCEAL OR OBSCURE THE LEGIBILITY** of the license tag of a motorcycle is prohibited. ... [A] license tag ... for which the numbers and letters read from top to bottom may be **AFFIXED PERPENDICULARLY TO THE GROUND.** Notwithstanding the authorization to affix the license tag ... perpendicularly to the ground, the owner or operator ... shall pay any required toll ... by whatever means available.

None of the operative terms — "plainly visible," "legible," "clear and distinct," "other obscuring matter," or "clearly visible from the rear at all times" — is defined, and the statutes supply no measure of distance, angle, lighting, weather, or plate configuration by which a motorcyclist could test his own compliance before he rides. The absence of any distance standard makes the point concrete. Section 316.2085(3) — the statute under which Mr. Warner was cited — fixes no distance at all at which a motorcycle tag must be legible. The only measurable benchmark in the scheme is § 316.605's command that a plate be "plainly visible and legible ... 100 feet from the rear or front," and that figure is keyed to the standard automobile plate, which Florida law requires to be "at least 6 inches wide and not less than 12 inches in length" while authorizing "a plate with reduced dimensions ... to accommodate motorcycles." Fla. Stat. § 320.06(3)(a). The motorcycle plate the department issues under that authorization is far smaller — four inches by seven inches. Fla. Dep't of Highway Safety & Motor Vehicles, Div. of Motorist Servs., Procedure RS-61; see also Fla. Stat. § 320.08068 (motorcycle plate "4 inches wide by 7 inches long"). A smaller plate is legible only from a shorter distance, so the 100-foot benchmark cannot sensibly apply to it. Florida law thus recognizes that motorcycle plates are smaller

11

and less visible than automobile plates, yet gives motorcyclists no distance — or any other — measure of what "clearly visible from the rear at all times" requires.

The command that a tag stay visible "at all times" makes compliance turn on transient conditions no rider can predict or control. Florida's own courts prove it: in *English v. State*, 191 So. 3d 448, 450 (Fla. 2016), a tag "readable, only momentarily" — its legibility shifting as the vehicle moved — still violated § 316.605. A motorcyclist cannot know from one moment to the next whether a tag that satisfies the statute now will offend it after the next turn. And the rider who studies the statute fares no better, because it points both ways at once: it commands rear visibility yet authorizes a perpendicular, tire-obstructed mount that defeats it (Part C below).

The motion's answer — that the terms carry their "plain meaning" (Doc. 22 at 3–4) — misunderstands the doctrine. Vagueness is not ambiguity: a statute may be grammatically clear yet still fail to give notice because it supplies no standard for what satisfies it; the loitering ordinance struck in *City of Chicago v. Morales*, 527 U.S. 41, 56–60 (1999) used ordinary words. The motion's own lead authority proves the point. In *Dream Defenders v. Governor of Florida*, 119 F.4th 872, 878 (11th Cir. 2024) (the riot statute survived a vagueness challenge only after being construed to require a specific intent to assist others' violence), the riot statute survived only because the Florida Supreme Court construed it to require a specific intent to assist others' violence — an intent element that supplied the fair notice the doctrine demands. The plate-visibility terms have no comparable construction and no intent requirement. The presumption of constitutionality the motion invokes (Doc. 22 at 3) does not fill the gap: it cannot defeat well-pleaded facts at the pleading stage, the avoidance canon requires a fairly possible narrowing construction these open-ended terms do not admit, and a state-law canon does not control the federal question. Nor is the statute saved because it might be clear in some hypothetical application: "[i]t is the statute, not the accusation under it, that prescribes the rule to govern conduct." *Lanzetta*, 306 U.S. at 453.

12

## B.   THE STATUTES SUPPLY NO MINIMAL GUIDELINES TO GOVERN ENFORCEMENT — THE PRONG THE MOTION IGNORES.

Fair notice is not the only concern, or even the principal one.  "[T]he more important aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine — the requirement that a legislature establish minimal guide- lines to govern law enforcement"; absent such guidelines, a law "vests virtually com- plete discretion in the hands of the police" and is void. *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) (the more important aspect of the doctrine is the requirement of minimal guidelines to govern law enforcement); accord *Morales*, 527 U.S. at 60; *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018).  The motion never engages this prong; it argues only fair notice. Doc. 22 at 4.

The visibility terms supply no such guidelines, so enforcement turns on the eye of the individual officer. Director Kerner says as much: the command that a tag "re- main clearly visible from the rear at all times" is enforced, in his telling, on "the facts and circumstance of how each tag is displayed." Doc. 22 at 5.  That is enforcement by ad hoc judgment, not by standard — the very evil the minimal-guidelines require- ment exists to prevent. A statute that supplies no standard "vests virtually complete discretion in the hands of the police" and works a "standardless sweep" that "al- lows policemen, prosecutors, and juries to pursue their personal predilections," and so "furnishes a convenient tool for harsh and discriminatory enforcement ... against particular groups deemed to merit their displeasure." *Kolender*, 461 U.S. at 358, 360 (quoting *Papachristou*).  That danger is concrete here, not abstract: the Complaint alleges Mr. Warner's plate was visible and compliant, yet he was stopped on a false plate-visibility pretext and cited only after he objected that the stop was racially mo- tivated.  Compl. ¶¶ 12, 23, 38, 74.  Section 316.605 carries no scienter element to cabin that judgment, and Florida's highest court has confirmed how far it runs: § 316.605(1) reaches any matter — on the plate or external to it — that renders a tag less than plainly visible, without regard to intent, even where a letter is obscured "only

13

momentarily." *English v. State*, 191 So. 3d 448, 449–51 (Fla. 2016). Two justices warned where that leads: the construction places "in the hands of law enforcement unfettered discretion to enforce the statute," with "[t]he possibilities under which law enforcement may now detain drivers ... limited only by the imagination," and lets a violation "serve as a pretext for an otherwise invalid stop." *Id.* at 453 (Perry, J., dissenting). That is the arbitrary-enforcement vice the Due Process Clause condemns.

*English* does not foreclose Count XII; it supports it. The majority's holding that § 316.605(1) is "clear and unambiguous" resolved a question of statutory ambiguity — whether "obscuring matter" reaches objects external to the plate — to settle a conflict between two District Courts of Appeal. It did not decide a federal void-for-vagueness challenge, and a statute may be unambiguous in the construction sense yet still vague in the constitutional sense. *English* differs in every other respect too: it was a criminal suppression motion testing one stop, on a plate that was in fact obscured by a hanging tag light that left a letter unreadable; Mr. Warner's plate was visible and compliant, Compl. ¶ 12, and his citation was dismissed, Compl. ¶ 30. And *English* construed only § 316.605(1); it never addressed § 316.2085(3) or the perpendicular-mount provision.

## C.    THE PERPENDICULAR-MOUNT AUTHORIZATION CONTRADICTS THE REAR-VISIBILITY COMMAND.

Section 316.2085(3) commands that a motorcycle tag "remain clearly visible from the rear at all times," then, in the same subsection, authorizes the operator to affix it "perpendicularly to the ground," reading top-to-bottom. Fla. Stat. § 316.2085(3). A perpendicular tag is mounted vertically beside the rear tire. Though it still faces rearward, the tire and wheel obstruct it across roughly half of the rear viewing arc: from every vantage point on the side opposite the mount, the tire stands between the observer and the plate. A standard rear-facing plate has no such obstruction. The

14

statute thus authorizes as fully compliant the very rear-invisibility it elsewhere forbids. No one contends Mr. Warner's plate approached that degree of obstruction, yet he was cited while the statute blesses far greater. A command the statute itself contradicts gives a motorcyclist no way to know what "clearly visible from the rear" requires and gives an officer no benchmark to apply. That is the facial standardlessness *Kolender* and *Morales* condemn, and it distinguishes *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (upholding a standard bounded by a concrete, measurable referent), which upheld a standard precisely because a concrete, measurable referent bounded it. The visibility terms here have none.

This defect is internal to § 316.2085(3)'s own visibility command; it does not depend on any choice between the two statutes, and it survives Plaintiff's conditional concession of the choice-between-statutes counts. Mr. Warner's motorcycles display plates in non-standard locations dictated by custom fender and frame configurations. Compl. ¶¶ 31–32. The textual incoherence requires no record.

## D.  AT A MINIMUM, THE AS-APPLIED VAGUENESS CLAIM SURVIVES.

Even if the Court were unpersuaded that the visibility terms are vague in every application, Count XII states an as-applied claim. Mr. Warner alleges that his plate was visible and compliant, that he was cited under § 316.2085(3) anyway, and that the citation was dismissed, Compl. ¶¶ 12, 30 — yet he remains subject to the same undefined standard each time he rides, Compl. ¶¶ 31, 51. That a statute may be clear in some applications does not defeat an as-applied vagueness challenge at the pleading stage. The Complaint pleads Count XII both facially and as applied; at a minimum, the as-applied claim must proceed.

## VI.   COUNT XIII STATES AN EQUAL-PROTECTION CLAIM THAT SURVIVES RATIONAL-BASIS REVIEW.

Count XIII raises one question: whether Florida may punish motorcyclists far more harshly than every other motorist for identical plate-display conduct. The classification is stark. For the same conduct, every other motorist answers only under the noncriminal, nonmoving § 316.605 — a nominal fine, no points, no criminal exposure of any kind. A motorcyclist alone is routed through the escalating, felony-capped scheme set out above. Cars thus receive a civil citation, while motorcyclists alone are routed into an escalating, felony-capped scheme for the identical conduct — bearing, even on a first offense, an approximately forty-fold-greater fine, driver's-license points, and a moving-violation classification, with a third-degree felony on repetition. Compl. ¶¶ 24, 26. Because motorcyclists are not a suspect class, rational-basis review applies, and *ABATE of Georgia, Inc. v. Georgia*, 137 F. Supp. 2d 1349, 1355 (N.D. Ga.), aff'd, 264 F.3d 1315 (11th Cir. 2001) (motorcyclists are not a suspect class; a helmet law survives on a safety rationale; aff'd, 264 F.3d 1315 (11th Cir. 2001)), does not control, because it turned on a safety rationale a plate-display penalty does not share.

Rational-basis review is deferential, but it is a question of law the Court may decide now: taking the Complaint's allegations as true does not convert it into a question for trial. *Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1306–07 (11th Cir. 2009) (affirming a Rule 12(b)(6) dismissal on rational-basis grounds). The classification fails even so, on the face of the statute: each interest the scheme could conceivably serve — toll enforcement, identification, and deterring evasion — is common to every motor vehicle, so none can rationally explain singling out motorcyclists for far harsher punishment, and a classification "whose relationship to [an] asserted goal is so attenuated as to render the distinction arbitrary or irrational" fails even rational-basis review. *City of Cleburne v. Cleburne Living Ctr.*, Inc., 473 U.S. 432, 446 (1985) (a classification too attenuated from its asserted goal fails rational-

basis review). The disparity does not even depend on recidivism: on a first offense, a motorcyclist already faces a $1,000 fine, points, and a moving violation for conduct that costs every other motorist only a nominal, point-free, nonmoving infraction.

*ABATE* illustrates the difference rather than bridging it. The helmet requirement survived because it addressed a danger unique to motorcycles: an automobile surrounds its occupants in a steel cage, with crumple zones to absorb crash forces and airbags to cushion them, while a motorcyclist has none of that and is exposed to catastrophic injury in even a minor collision. A helmet mandate to prevent death and serious head injury is thus a motorcycle-specific safety measure with no analogue for the driver of an enclosed car. Plate display is the opposite. An obscured or hard-to-read tag — and any toll evasion it enables — is in no way peculiar to motorcycles; the same conduct, accomplished with the same plate covers, frames, and obscuring devices, is available to every car on the road. Yet § 316.2085(3) singles out motorcyclists alone for the enhanced, points-bearing, criminal-capped penalty, while every other motorist who commits the identical violation answers only under the nominal § 316.605. A classification that punishes one class far more harshly for a problem common to all lacks the very thing that sustained the helmet law in *ABATE* — a justification rooted in a characteristic unique to the regulated class.

Director Kerner's lead justification is toll enforcement. Doc. 22 at 6. But toll enforcement is not unique to motorcycles, and that is fatal to the classification. Every vehicle on a Florida toll road is billed through the same plate-reading system; every driver has the same means to defeat it — a cover, a frame, an obscuring spray, a removed or flipped tag — and, because cars vastly outnumber motorcycles, car drivers evade tolls far more often in absolute terms. The State's interest in collecting tolls and deterring evasion is therefore identical across vehicle types; it has no greater stake in a motorcyclist's readable plate than in a car's. An interest common to every motorist cannot rationally justify reserving a $1,000 fine, license points, and felony exposure for motorcyclists while every car driver who does the same thing answers only under

17

the nominal § 316.605. If strict toll enforcement warrants those penalties, the State must impose them evenhandedly; it may not collect the same tolls by punishing one class of motorist forty times harder than the rest.

Director Kerner's one motorcycle-specific wrinkle — that a rider can reach back and peel off a magnetic tag while passing through a toll plaza, Doc. 22 at 5 — does not rescue the disparity, for two reasons. First, on-demand concealment is not peculiar to motorcycles. Car drivers defeat toll and camera systems with mechanical "flipper" frames, mirrored and tinted plate covers, and reflective sprays — many switch-operated from the driver's seat at speed — so the risk of deliberate, in-transit concealment is, if anything, greater for cars than for motorcycles. Second, the premise is physically untenable: a motorcycle tag is mounted at the rear of the machine, behind and below the seated operator, beyond the reach of a rider controlling the motorcycle in motion. At most the concern supports a uniform requirement that every tag be permanently affixed; it says nothing about the condition Mr. Warner was cited for — a plate merely less than "clearly visible," which no act of removal produces. And the statute's intent-based prohibition deepens the inequality rather than explaining it: § 316.2085(3) alone forbids "any deliberate act to conceal or obscure" a tag, while § 316.605, which governs every other vehicle, contains no comparable command. The Legislature thus reserved its evasion-targeting sanction for motorcyclists alone, though concealment and evasion are conduct every driver can commit — and most who do are not on motorcycles.

The principle that a legislature "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind," and "may select one phase of one field and apply a remedy there, neglecting the others," *Williamson v. Lee Optical of Okla.*, Inc., 348 U.S. 483, 489 (1955), does not save this classification. That doctrine lets a legislature do less about a subset of a problem; it does not let the State single out the smaller, less numerous class — motorcyclists — for an escalating, felony-capped penalty scheme when the identical conduct remains

18

a nominal, nonmoving infraction for the far larger class that, on the Complaint's allegations, commits it at least as often. The trait the State selected — two wheels — must still bear a rational relationship to a legitimate state interest the harsher penalty serves, and here it does not. *Cleburne*, 473 U.S. at 448.

Nor does a generalized interest in identifying vehicles save the scheme, for the same reason: identification is not peculiar to motorcycles. Every license plate exists to identify its vehicle, and the State needs a motorcycle no more identifiable than a car. Because that interest is identical across vehicle types, it cannot rationally justify punishing a motorcyclist far more harshly — let alone criminally — than every other motorist for the same plate-display conduct, which costs a car driver only the nominal, nonmoving § 316.605 infraction.

Director Kerner's remaining rationale — that motorcycles are "treated differently," in that operators need not carry the same insurance and may use a perpendicular plate (Doc. 22 at 6–7) — supplies no rational basis for the disparity. The question Count XIII poses is not whether a plate is clearly visible; it is whether the State may punish a motorcyclist far more harshly — a moving violation, an approximately forty-fold-greater fine, license points, and, on repetition, criminal prosecution — for the same plate-display conduct that costs every other motorist only a nominal, nonmoving civil infraction. Neither of Director Kerner's examples touches that question. The insurance exemption concerns financial responsibility, not plate display at all. The perpendicular-plate allowance concerns plate display, but supplies no justification for the penalty disparity; its only real significance is to the vagueness Count XII addresses — the same subsection authorizes a top-to-bottom mount beside the rear tire while commanding that the tag "remain clearly visible from the rear at all times" and never defining what "clear" requires. Because every interest the scheme could conceivably serve is common to all motorists, none can justify reserving the enhanced, points-bearing, felony-capped penalty for motorcyclists alone.

## CONCLUSION

The Court should deny Director Kerner's motion to dismiss as to Plaintiff's standing, Count XII, and Count XIII. Plaintiff does not oppose dismissal of Counts IX, X, and XI on the conditional basis stated above. To the extent the Court finds any pleading deficiency, Plaintiff requests leave to amend under Federal Rule of Civil Procedure 15(a)(2). And because the standing challenge is jurisdictional, any dismissal on that ground must be entered without prejudice. *Stalley*, 524 F.3d at 1232.

June 17, 2026

Date

/s/blake warner

Signature

Blake Warner, *pro se*

2211 S. Village Ave

Tampa, FL 33612

Telephone: (212) 542-0055

E-Service: blake@null3d.com

20